I am pleased to report that we are obviously after the announcement of the bid to date of the school council's bid for the J-campus. I have only watched the whole talk, but I hope to be a part of the event as well. There are a number of issues that have been raised on this panel, most of which I have since the beginning of the meeting, that have focused my attention on class certification issues. I am, of course, prepared to answer questions on other topics as well. The primary purpose of Rule 23b-2 is certification of class actions in civil rights statutes seeking injunctive or deductible leave. This is a prime example of that type of case. In this case, we allege that HPT refused to act on grounds generally applicable to the class by not providing military-accessible transportation as required by the ADA, and we back up that allegation by providing evidence that more than 90% of its hotels do not provide required accessible transportation. I'll be a little long on a couple of questions. Commonality and specificity, it's kind of hard to distinguish which one to use. It's simple decisions of safety, so I wanted to try. Sometimes airport hotels are all in a bunch, and sometimes they're spread out in different places, and sometimes other hotels that have vans are all brought together, and sometimes they're spread out. And some hotels provide transportation for people in vans, some cars, and some not at all. Why should this be treated as a class? Why isn't it like Dukes v. Walmart, where there are just too many variations between the different types of classes of computers, and is your class one of the commonalities you can count on? On Walmart, it was a very different case because the title said a disparate treatment case in which, according to the Supreme Court, the, quote, crux of the claim hinged on the motivation of the defendant. Well, wait a minute. Let me focus a little more. You're right about that. Let me focus a little more on why I brought it up for commonality and specificity. What was striking about Walmart is the home office didn't tell stores what to do. They were all independently managed, and they ran and they operated in different ways. So, what the Supreme Court ultimately said was that there wasn't enough commonality in whatever their employment practices were for them to be treated as a class. And here, it strikes me that these hotels and motels might be the same, just operated in different ways by different operators, and entirely independent and generally competitive with each other, so there wouldn't be any single home office, just as there was in Walmart, who was telling Walmart what to do. In this case, there is a non-delegable duty owed by HPT to ensure that the hotels that So, unlike Walmart, where when they delegated these responsibilities for hiring to store-level personnel, and one would have to look into each store manager's reason for engaging in adverse employment actions, here, what we need to demonstrate is exactly what we did demonstrate, and which was accepted for purposes of its decision by the District Court, which widespread failure by these hotels to provide equal and accessible transportation, once we've demonstrated that there is no defense based on what may be going at the individual's doors, because we've proven that what is not happening is what's required, which is accessible transportation. I'm just going to let you guys see what that said. The defendant here is a real estate investment trust. As I recall from looking into those investments, the way it used to work was you could buy shares, just as you could buy shares of stocks in a corporation, and whatever price was, as opposed to, say, a corporation investing in real estate, was a trust, and at least 90% of the profits have to be paid out as dividends, and the reason that people organize as a right in order to attract investors is that otherwise people would want the dividends as, first, they get taxed at the corporate level, and then they get taxed at the individual level with the right, as long as basically all the profits get paid according to the shareholders as dividends. They're not taxed at the corporate level, but the thing is organized as a right. It can't be an operator, and in any event, in this case, it's bound by contracts with the operators, Holiday Inn or whoever they are, to operate these motels, and it can't be what you want it to do. In that, you just hit on one of the most important, common questions for the class that is central to the validity of each class member's claims, and it is important to remember that in the Supreme Court's decision in Hale, Jim, in this Court's decision in Stockwell, the answer to the question of whether the rates, the provisions, or the management agreements, the money and jobs that were made that could be entered in this case, is a parent's question, and it's not something that ought to be decided on in class certification. The point of class certification is that this vital question of central to the validity of each class member's claims is something that can be answered in this case, and therefore establishes the commonality requirements. One of the things that I want to emphasize is the two reasons that the district court gave for finding that class certification had to be denied here. One of those is that unless our class judged a uniform, official, unlawful company policy or sued under a statute that specifically required HPT to implement a policy, that class certification has to be denied. Those things still have to be regressed under 23b-2, I think it is. There has to be something you can do about the problem with injunction, and if these real estate investment trusts are all bound by contracts with operators that say you operated however you like, we have nothing to say about operation, then no matter what the court wants the defendant to do, it couldn't do it, which means an injunction couldn't do the opposite, it couldn't. Given, and of course that again assumes the answer to the merits question, which is that the breach of provisions in the management agreement struck the requirements of the ADA, let's assume that's denied on the design of class certification, let's assume that is the answer that this court arrives to. There's still a number of injunctive provisions that the district court may enter as being justified by breaches. It would be consistent both ways. You're in your office building, in your unit in your office building, and our lease is just that you pay me the rent, and I have nothing to say about how you run your law office, and then one day I come to you and I say I'm really upset you're not doing any domestic relations, I want you to make 20% of your credit as domestic relations, you'll go into a new office building. Again, assuming that those provisions struck the ADA, we identify using a management agreement that was submitted by the defendants in which they asserted was typical of their management agreements, relief that would be consistent with the provisions of those agreements, because each one of those agreements includes a requirement of law provision that says the operators, the management companies, will comply with all requirements of law, and if they don't, then HPT has the right to notify them of this, and if the management companies don't bring their hotels into compliance, that's grounds for termination. So even if they use the agreement, they could actually do something about it. Yeah, they could actually use the agreement. Do you believe that I can? We believe that the brief provisions of the management agreements folks from the ADA we would look for is the injunction requiring specific implementation of operational and training policies along the lines of what was approved by this court in Arlington. So, for example, we would want them, because many of their homes house contracts or use third parties to provide accessible transportation. Often those third parties don't even operate under the same hours that the hotel transportation is available for non-seeking persons. So I think that a good injunction that requires them to take an inventory of which third parties they use, see whether or not the hours in other terms correspond with the hours available for non-accessible transportation, and if not, start finding additional people to provide accessible transportation. That is one thing. The other part is the training. It does no good for a hotel that actually has accessible transportation if their employees don't know about it and to help disable potential guests that don't have accessible transportation. So like the Armstrong injunction approved by this court, we receive something that required the hotels to engage in training. And then finally, some sort of monitoring to make sure that this has been doing to comply. If we lose on the substantive point about whether there be provisions in the management agreement from the ADA, we would seek an injunction along the lines of what was mentioned to Judge Kleinfeld, which is they use the provisions of their management agreements that say that they must comply with law and notify the fantasy companies that their hotels are not going to comply with law. So like that, they bring it into compliance and they don't terminate the agreements. One more point on the basis that the key support gave. It said that it would have to, in order to enter an injunction in this case, look at every potential violation in every one of the 142 hotels at issue here. And that's for a couple of reasons. First of all, this court has held that while the scope of the injunction should correspond with the scope of the violation, and thus, for a systemic injunction, we need to show pervasive violations of statute. That doesn't require the district court to look at every potential violation. Thus, for example, in the Oregon Advocacy Center case, this court affirmed an injunction covering jails in 36 counties based on evidence of jails in seven counties. And in Armstrong, which was a case challenging the accommodations provided to disabled prisoners and parolees all across the state in connection with parole revocation hearings, the district court's evidence looked at the experiences of only 17 disabled parolees and prisoners. So the concept here is that you can use symptomatic evidence to interest the injunction, and it doesn't require the court to separately address all 142 hotels, or importantly, a distance of class certification. What would you tell the hotels, or what would you require? Hospitality, property trusts, tell the hotels. I mean, some are in clusters, some are near the airport, some are in freeway intersections, some are downtown, in big towns and small towns. Some use VINs, some use MMOs. Those are distinctions without a difference in purpose. If you don't follow the law, what could you tell them beyond that? You can tell them the kinds of things I was just mentioning, which is these folks we've established based on undisputed evidence that all 142 hotels are subject to the equivalent transportation requirements. That means that they need to provide accessible transportation that's equivalent to the transportation that they provide non-disabled people. You would instruct the management companies to inform HPT exactly what exists in transportation. It just has to be just as good as what they give people that don't have the disabilities. The easiest thing for the hotels to do is say, okay, we're eliminating our transportation for guests, and people are just on their own. They can take cabs, they can do a cab line, whatever they want. They can do that. But then if there was a reason to, because the laws made it harder for them to provide free VINs, why would you choose to do that? They wouldn't do that. This is another discrimination. Why wouldn't that mean that commonality is even more of a problem? So that you're providing transportation somewhere? Because if they are providing transportation, then they're not subject to the requirements. That's right. I just, I've had these cases where the bathroom in a restaurant wasn't wheelchair accessible. So what the owner of the restaurant did was just roll off the bathroom. It's employees only. No one can go to none of the patrons can go to the bathroom. We have a moment left, but in the spectrum of difficult class actions, and easy class actions, this is much more on the easy side. If you compare this, for example, to Ms. Thornton's classification, decisions that are parsed, that are strong, the questions there are much more complex than those that are here. And remember that under Walmart, we just need to identify one common question, crucial to the leadership play, and you resolve it once. And we've done that. We've identified more of such claims. I mean, the immediate provision points, the question you can't tell, you can't get an injunction that says they all have to provide wheelchair accessible transportation because they don't have to provide transportation at all. But we can get an injunction that says, if they have hotels that provide transportation, they need to provide equivalent access to transportation. And that's not an unknown kind of injunction. I see my time is up. I'm hopeful that I can end on a better score. Okay. Thank you. Enjoy. Thank you. Good afternoon, Your Honors. David Reisman, Assistant Attorney General of the L.E. House, with the L.E. Corporation. Sorry, I'm projecting, I think, here. The plaintiffs in this case have chosen not just multiple operators, and they're choosing to break the subtitle and make decisions about whether to have transportation services, how to provide those services. And is that failing, and some others, that prevents there from being commonality? Could you deal with something raised by your advisory in arguing that the implication of this argument is that the commonality is that there's just one defendant that owns all the properties, and you can tell that defendant to make sure that if his operators provide transportation, that it be accessible? Your Honor, that's, if I may, sort of a capital to Wal-Mart in the Duke's case. Wal-Mart had an obligation not to discriminate under Title VII. Whether it was monitoring its various managers all around the country or not, it clearly had a responsibility on superior duty to make sure there was no Title VII discrimination. But the failure there and here is the same. That we had multiple managers that we would argue, and your case will get to that in a second, that even accepting that we control these managers, which we don't, or had even the power to control them, like Dukes, there's no clue that holds the decisions of these multiple managers together. And that's the same commonality here that can't be done. We think further, and as the Court knows, we've argued, that it's not the duty of the owners to hook up to the operators. Congress used specifically different language in 1218 to want that point. Mr. Counsel? The reads go in far beyond their discrimination. Could they say, jeez, some of our operators don't allow African-Americans to stay there? Is that not our problem as the managers? Or that some of the operators don't allow same-sex couples? That's not our discrimination as the operator. Where does that end? Your Honor, in this particular case, I think it ends in 12082B2B and B2C. But I think I have other responses as well. Those particular provisions say it's the operator that has responsibilities for providing transportation services. But even going beyond that, this is not a liability case. And other than that statutory argument, HBT is not arguing, never argued, and the District Court didn't rely on at all the notion that it's not liable. The question is whether there's an existing clue. My point is the reads can make money, and if the wind falls of their corporate structure, by simply saying, hands off, we farm out these management contracts, and it's up to those managers to do what they please. Your Honor, I would analogize this to the Bonnison case. In Bonnison's case, the plaintiffs, the appellants initially say, there's the principle that you cannot extract away your liability or your responsibilities under statute. If I may interpret Your Honor's question in that light, the difference here is that HBT, as it reads, has no operational ability. It's a creature of commerce. It's not a mistake, and it's not a mistake in the hotel context either. They specifically created these TRS entities to own hotels, and they specifically told them, you may not operate the hotels. So when the read comes to the process of owning a hotel, it is specifically doing so with all operational hands tied behind its back. It cannot do it. It's not done anything improper. It's not turning a blind eye to it. It's simply unable by its very nature. It gets decided with one of the contractors for the management of the hotels. It doesn't get to do that either, Your Honor. I think it's not exactly what they're managing. They can contract the next time, or if it's a breach of the contract, it falls in the law, they can break the contract. They could do that, Your Honor. I would posit that that's a very difficult step to take, and there's going to be an alternate litigation over any termination. The non-renewal. The non-renewal begs the next question, which is pointed out by this court. I'm sorry, the U.S. Supreme Court in Sarko, and also by this court in Clayton, that just getting rid of the problem operator does nothing to assert that third parties, not before the court, are going to do anything to compel with the law. In Sarko, it was the school trust funds that they were saying were being used for improper purposes. In the case where we put those monies back in school trust funds, and the Supreme Court yelled that that will do nothing to compel the Arizona legislature in this case to supplement, further supplement, its funding to schools. They could just increase it now that there's more money in the school trust funds. Same thing in Clayton. It was the charge that benefit plans were charging too much money to the employer sponsored by the plans for prescription drugs. Again, the plaintiffs were arguing, put that, charge them less, and that will nurture our benefit and lower premiums and lower co-pays. But there's nothing the parties could do in that case to ensure that these health plans would reduce premiums or reduce co-pays. They're perhaps third parties, not before the court, that prevent progressibility and, in my opinion, also affect the functionality and the availability of the P-2 conjunction. A lot of these issues tend to merge together when you get down to the analysis. But the important thing, even if the REITs, they have the obligation to operate under 12182, B-2B and B-2C, and even if they also were found to not be able to contract the way that responsibility was increased, even with those two co-pays, even with those two stipulations, there's nothing here that shows these multiple operators were, have anything in common. There's nothing about an experience at one hotel in front of one operator who's not even identified. There's no attempt by the plaintiffs or their expert to identify who the actual manager was. I think Dr. Quinn's testimony is very revealing in this light, Your Honor. Because Dr. Quinn testified that he didn't know what management policies were being used. He didn't know what was training. And he admitted in his deposition that he was unable to conclude whether it was poor hiring practices, whether it was poor policies, whether it was poor training, or anything else. And, of course, he couldn't do it. Because he hadn't asked any questions about that. And there is zero proof in the record, in this appellate record, and even the record below I'm going to present, that talks anything about training or policies or anything else. There's simply no clue to hold the acts of these different hotels together. And we would say that recovery is not regressible in this court without the managers in the courtroom. I'd like to expand in terms of your being class action against the common owner, but not the separate operators. I'm sorry, listen, this is the first part of your question, Your Honor. Why would there be a class action against the common owner rather than the separate operators? They've been trying to think of a reason for leaving them out, and I was thinking maybe a lot of unnecessary or indispensable party litigation to follow if the case survived. And the recipient that I want to come up with is what the building's lawyer ended up with, which is, that's how you get your commonality. There's just one common owner. There's commonality among the different hotels managed by the same manager. So within any particular grouping of hotels, the manager operates 30 hotels, 20 hotels, 100 hotels. There may be commonality, but there isn't. And there's no evidence in the record at all on the subject. One of those managers that manages 30 hotels could be completely hands-off, or a manager might be particularly, oh, he's a good manager. I'm going to let him manage the hotel the way he does it. There's no evidence to suggest that the way one manager operates the hotel is the same as any of the management companies in how they operate the hotel. So finding a violation in any particular location doesn't tell us anything about the cause for that violation. And if you may borrow from the prior argument, these are wet streets correlating with the rate you're under. Just finding, based on one call, and on 20 occasions, two calls conflict with the first call, yet people didn't provide the right answers when asked about equivalent transportation services doesn't tell you what's causing this. And in particular, it doesn't tell you what's causing it when you don't know which hotels are operated by which managers. There's simply no attempt to tie any of these facts together. And Dr. Quinn even admits that it could be training, it could be hiring protocols, it could be bad policies, it could be bad employees. Any of these factors could affect it. How would the court? So, for example, citing Armstrong, Mr. Fox argued that you'd be able to have what was the phrase used? You have symptomatic evidence and you can have a systemic injunction. I'm not so sure that that's still good law after Dukes, at least in the Armstrong case. But even if it were, we had a single actor in that case. With uniform policies that were being challenged, we don't have that here. But is it a matter of why they're not providing equal service as opposed to the fact that they're not providing equal service on disabled hotels? Well, Dr. Quinn posits that it's lack of training and lack of policies. What difference does that make? I mean, if you're doing it or you're not doing it, right? That would be important, yes. What you're doing is the hotel is not providing, it's not important that you frame an injunction, particularly the injunctions of the type that have been suggested by the appellants and ought to address the issue. And we'll have no understanding, and this is where we come back to the mini trial, and this is where we distinguish Armstrong and Morgan advocacy. But you can't get a systemic injunction because it will end up being a big law type injunction unless we start to understand what caused each of these different managers to violate the law. I guess they've already got a provision. It sounds like it's the usual provisions of the death penalty. You know, the landlord and the hotelier, these two starts having prostitutions, gambling, and drugs on the premises of any victim that conforms to the law. Law is no beast, and it could be. And I suppose we could say, well, that applies to legal access for disabled people, too. And as the appellant's lawyer suggested, you know, so far we're not in any mini trial. What would the mini trials be about? I think the mini trials, if we're going to fashion injunctive relief, would be about what caused the wrongs to occur, caused the OIC, you know, you'd need a mini trial to decide whether, for the holiday ends, it's like a policy, and for the state bridge ends, it's like a training. And your guess is as good as mine because it's completely speculative, Your Honor. It may be that even between hotels with the city manager there would be different issues. I do believe that we should defer to the judgment of the trial court. This is as well within the trial court's discretion. That's right. Your Honor, in particular on an issue like this, an issue of how to fashion an injunction, those are issues that are squarely within the discretion of the courts and the local power. And when you're trying to decide, well, this issue drives the resolution of dispute with respect to commonality, we should, again, defer to the trial judge. That much more is determination. It's going to be about how one is going to determination, determine liability in this case. Your Honor, as you haven't asked, and there's been an absence for one group of hotels, we're going to say something like you're required to train all employees within three weeks of their starting their jobs. And for another hotel, it would be you're required to change your policies so at least one of your six rooms is wheelchair accessible. Just defer for different ones. I suspect he still wonders as I sit here today why we don't have complaints against managers because I suspect, there's zero evidence of this, by the way, that managers do have common ways of operating the hotels they manage and are controlling this transportation situation. But we don't know that. We only begin to see, Your Honor, so yes, not only would we need separate injunctions to secure the problem, we would need many trials to understand the problem so that we could draw up an injunction. With the time we have left, Your Honor, I would only ask that we make clear that this court needs to reach to parents' issues where they overlap with the issues AMGEN stands for, the idea of not having a sense of many trials to do that. But no one is asking for any of that here. And with that, I would ask the court to please defer to the district court in affirming of the certification. Thank you, counsel. And you can have a couple minutes. Mr. Fox? Thank you. Mr. Nienzig, Judge Martel has a point about the reason why these hotels do not comply is irrelevant to the ADA. What matters here is that they are subject to a statutory or regulatory requirement that they provide equivalent transportation requirements and that they train their employees about these transportation systems. Dr. Quinn Clausen, 138 hotels, of those, more than 100, said that they provide transportation services generally, but they don't provide any accessible transportation services whatsoever. That is a violation. It doesn't matter what's going on in the hotels that results in that violation. It's a violation. Mr. Fox, I respond to Mr. Reisman's argument about the need for many trials. There's no need for many trials here, any more than it kind of depends on what the characterization of many trials is. For example, in Armstrong, what we need to be able to do is circle pervasive violations. Just as in Armstrong, the plaintiffs needed to circle pervasive violations, what they did to establish them was to present evidence of 17 different parolees, disabled parolees, and prisoners. One way to characterize that is 17 many trials, but that would be a missed point. The 17 different individuals experienced together show pervasive violations. Hotel-specific violations here together show pervasive violations. These are not difficult analyses either, as opposed to, for example, in Armstrong, where each person's disability would need to be assessed as well, and the accommodations that a person needed would need to be assessed, and what they were provided would need to be assessed. Here, what we're talking about is a simple, discrete set of requirements saying that each hotel needs to provide accessible equivalent transportation, and it's just as important, accepted for the purpose of this decision. And we did something that we showed that more than 90% of HBDs in hotels are in violation, and nevertheless, it's just as important the other way. And the requirements on those sort of conditions are basically transparent. One more question. Mr. Prime Minister. Right, Matt. Right. In this case, it's Walmart. This is the home office. The pharmacy decisions it out to the store managers. What they're doing is up to the store managers. They don't necessarily know what's going on. The grievance is doing the same thing here. What's the response? There's two responses. First, under POTUS law, there's a non-delegable duty so if the pharmacist comes out and we show that these hotels are in violation, they're responsible for it. But why wasn't it a non-delegable duty in Walmart? I mean, the second point, which is to show liability in Walmart, we had to dig deep and figure out. It wasn't enough in Walmart. It wasn't enough to show that it was the accurate point that the decision had occurred. And original historians, why? Here, it's enough to show that they don't provide what one expects from transportation, particularly on its own. The reason doesn't matter. All right. Thank you. That's all. Civil Rights Education Enforcement Center versus the issue of speaking is submitted. The session, of course, is adjourned for today.
judges: Kleinfeld, Wardlaw, Morris